Mr. Justice Humphreys
delivered the opinion of the court:
Replevin was instituted by plaintiff to recover a claim against the corporation of Washington, duly approved, passed upon and allowed, in amount six thousand ninety-six dollars and seventy-five cents. Plaintiff was anxious-to have money in the early part of 1.871, and prevailed on M. H. N. Kendig to raise the sum of three thousand dollars. He executed his note, payable to the order of himself, dated January 6,1872, at the First National Bank of Washington, D. C., for three "thousand dollars, interest ten per cent., sixty days after date, *528 indorsed said note, and at the same time delivered and indorsed to said Kendig, as collateral security, a paper denominated a voucher, signed by proper officers, evidencing a claim of plaintiff against the corporation of Washington for six thousand ninety-six dollars and seventy-five cents, the consideration of which was shown by another paper to be for work done by said Talty, and which he had indorsed.
On January 26,1872, said Kendig sold said claim or voucher to the defendant, a banking corporation in the city, for ninety-six cents on the dollar.
It is not pretended or claimed that the bank, or any of its officers controlling negotiations, knew of any understanding or arrangement, if any was made, between Talty and Kendig, other than the indorsement, which was in full and unrestricted. The plaintiff now claims that it was agreed between him and Kendig that if “ plaintiff, failed to pay his note at maturity, the said Kendig should have the right to buy the collateral at the rate of ninety cents on the dollar, if he so desired.” This is his own statement in evidence. He further states that he offered to pay Kendig the amount of the note a day or two before its maturity, but Kendig refused to receive such payment, or to deliver to him the note which he (Kendig) had taken up, or the said collateral.
There was no mark or memorandum on the voucher indicating that it was a mere deposit as collateral, but the indorsement was in blank. When demand was made on defendant to surrender the voucher, no tender was made of any money. Defendant gave evidence tending to show that it was agreed between plaintiff and Kendig that said Kendig might, if he elected, sell or take the said voucher at ninety cents on the dollar at any time before the maturity of the note; and that, after Kendig sold the voucher and took up the note, he offered to pay plaintiff the balance of proceeds of the voucher at ninety cents, to be computed, deducting the amount of the note, which plaintiff declined to accept. The circuit court charged the jury to retiirn a verdict for defendant ; and to that plaintiff excepted.
On the plaintiff’s own evidence, what was there for a jury to pass upon? Here was an indorsement in blank of a paper, the character of which, in all towns, is used upon *529 which to raise money. This class of evidences of debt may not in strictness be denominated commercial instruments, but they have certainly assumed somewhat of a negotiable character, or at least they so far enter into the facilities of obtaining and borrowing money that no court will be found to cast the burden of litigating as to the equities between the parties upon an innocent bona-fide holder for a fair valuable consideration.
The questions which might arise between Talty and Ken-dig certainly cannot all arise in this suit. Persons who put forth paper upon which they wish to raise money should always mark it, designate it, if they wish to control it. And when they do this, how much money could be raised on a ten-thousand-dollar security in three months ?
Hard, unconscionable bargains may be relieved against, and the party who is guilty may be controlled. But no rule authorizes the visitation of a man’s , own error upon a, bonafide third one. In this case a fair price was paid by the bank for the property in the paper. Plaintiff has not offered to return any part of the money which was given by defendant for the evidence of debt. On the plaintiff’s evidence alone, we are bound to find full authority in his broker, Kendig, to sell and dispose of the vouchers. If this be so, the court would have been too liberal to have sent the jury out to consider.
Every rule with which we are acquainted, as sustained by justice and the rigidness of legal technicalities, demand an -- approval and affirmation of the judgment of the circuit court, and the affirmance of that judgment is hereby ordered.